Judge Underwood
delivered the opinion of the Court.
The record in this case presents these facts. William Porter, Sen. had four children. Edwarcb William, John, and Jemirnah; Edward and William both died before their father, intestate, and without issue. William died first of the two, at least such is the inference from the testimony. William Porter, Sen. for the last 12 years of his life was non compos mentis. Shortly afier Edward’s death, the father died intestate. Jemirnah (who had been the wife of Henry Griggs, dec’d. and by whom she had six sons, of whom the defendant in error is one) on the 28th of June, 1809, executed a sealed instrument by signing her name and delivering it to one of the subscribing witnesses purporting to “make over and transfer two-thirds of all the estate, real and personal, which might, thereafter, descend to her at the death of her father, or that she might thereafter inherit from any of her relations, to Samuel Scott and Thomas Matson for the use of, and in trust for her six sons, fee.” naming them.
The consideration expressed is, “the natural love and affection she felt for her children.” The instrumerit authorizes the trustees to take possession oí said *-w°Ahirds the estate, whether real or personal, which might descend to said Jemirnah at the death of her father, and to take care of, and superintend it, for the sole use and benefit of her sons named. The instrument then contains a clause by which the said Je~ mimah released and gave up to her children all right of dower to a negro named Cyrus, then in Virginia, belonging to the estate of her deceased husband, and all her interest whether to real or personal property, in her said husband’s estate, and declared that thesame should be vested in said trustees Scott and Matson, to be by them kept and presorved for the use and benefit ofhei said children.
Deatly, prior to his marriage with Jemimati, assents to the inslrumem, & it is recorded.
Dea(, a¿¡. ministered on Edward Porit^as dfví" ded.' The slaves in defendant in error,
Judgment against Deafly trafarmánd" said slaves surrendered * an<1 sold'
Suit instifuskve^by6defendant in errori ?nd de' him,"
On the 29th of June, 1809, John Deatly, under his bund and seal makes an endorsement on said instrument, reciting that a marriage was about to be consummated between himself and said Jemimah Griggs, and that she had executed the same for the purpose of providing for the children of her former marriage; and thereupon consenting and agreeing to the same, in as complete a manner, as though he were bound by the “incorporation of his name in the deed,” and having “his hand and seal subscribed and affixed at the bottom.” On the 3d of July, 1809, said instrument was proved as to said Jemimah, and acknowledged by Jotin Deatly before the clerk of the Bourbon county court, and admitted to record in his office.
John Deatly, in January 1810, administered on the goods and chattels of Edward Porter, brother of said Jemimah, and on the 16th July 1810, the trustees, Thomas Matson and Samuel Scott and Richard Biddle, who had been appointed commissioners by the Bour bon county cohrt, to divide the estate of said Edward, made out a report of their division of said estate, which was thereafter returned to the court, approved and admitted to. record. In this division they set apart one third of the estate, real and personal, for said Jemimah, and they divided the remaining two-thirds among her six sons, allotting and assigning to the defendant in error, two slaves, Siney and Westley as his portion.
In May, 1811, Thomas Kirkpatrick obtained ajudgment in the Bourbon circuit court, against John Deatly as administrator of Edward Porter, deceased, execution issued thereon, which was replevied by Deatly. Thereafter an execution issued on the replevin bond, and Deatly surrendered Siney to the sheriff for the purpose of satisfying the execution. She was sold under the execution by the sheriff, on the 2d of November, 1811, and William Brown became the purchaser. He parted with the girl Siney, by sale to the plaintiff-in error, Beard.
On the 19th of October, 1821, Thomas Griggs, the defendant' in the character of an infant, commenced an action of detinue in the Bath circuit court, against Beard, to recover Siney and two children which she *24 then had. The suit was removed by change of venue to the Nicholas circuit, where ic terminated in June, 1823, in favor of Be.ard, upon trial had on the general issue.
Grises’ bill for a new trial, &c.
The answer of Matson am) Scott’s administrator
Amended bill
The answer of Brown and Beard.
Decree of the court.
Thomas Griggs in 1S25, filed his,bill in the Bourbon circuit court, against said Munson, as surviving trustee, and R. Cunningham, administrator of ScolI, then dec’d, William Brown, and the plaintiff in error, Beard, praying for a new trial in the action at law, upon due grounds of having discovered since the trial, material evidence unknown at that time, and which he alleges would have changed the result, provided the court should he of opinion, that the legal title to the slaves in controversy was in him; but if the-court should be of opinion that the legal title to the slaves was not in him, hut abided in the trustees, that then the court would decree a title to be made to him, and that Beard, the present possessor of the slaves, be compelled (o surrender them; and in the event, that his rights have been sacrificed by the negligence of the trustees, that then they be compelled to pay for the slaves, or that Brown be compelled to pay for them, if that should seerri more just; and finally that all such relieif might be afforded as his case required.
The trustee, Matson, and Scott’s administrator, answer and deny that said Matson and Scott ever accepted the trust, or did any act whatever as trustees, and the proof is clear that they did not; on the, contrary, they refused to have any thing to do with the trust.
The defendant in error, by an amendatory bill, in substance, acknowledged the refusal of the trustees to accept the trust, and prayed for the appointment of a trustee to execute it.
Brown and Beard deny their liability upon every ground, and Beard insists on the judgment in the action of detinue, as conclusive in his favor.
Tiie court dismissed the bill as to Matson, Scott’s administrator, and Brown, and decreed that Board should surrender Siney and her increase to Griggs. The reversal of this decree is sougnt by prosecuting this writ of erroir.
To the validity of a grant it is essential, there should be grantor & grantee able and willing to contract, a subject matter in issee to be granted & a present in* terest in the grantor; tho’ an instrument may assume the form of a deed, be delivered to any other than the grantee, and be regularly recorded, if it be not accepted by tbe grantee it. is inoperative
The validity of the instrument executed by Jemimah Griggs, is the first and most important question. Is it a good deed, and does it pass any title to those named as trustees, or to any others'? The most approved writers, speaking of the requisites of every well made deed, declare it to be necessary that there should be a grantor, a grantee, and a thing to be granted, or in other words “persons able to contract and be contracted with, for the purposes intended by the deed, and also n thing or subject matter to be contracted for. See 2d Blackslone’s Commentaries, 296, and Shepherd’s Touch* stone, page 55, volume 1st. The parties to this instrument, named as grantor cind grantees, were able to contract and be contracted with; but did they contract? They did not, as we conceive. The stipulations contained in the instrument to make a contract, must have been assented to by the minds of the contracting parties. They must have agreed to these stipulations.- Now, the proof is clear, that those who, by the instrument, are made the grantees, not only did not assent to the stipulations therein contained, but actually refused to abide by them, or to comply with them in any manner whatever. Again, to perfect a deed there must be a delivery of it. Now, if it be conceded that this instrument was signed, sealed and delivered, by Jemimah Griggs as her deed, still as the grantees never accepted but refused it, no title would pass to them in the thing granted. See Barlow vs. Hinton, 1st Marshall, 97. That a title cannot be vested in an individual by an instrument assuming the powers of a contract against his consent and will, is a proposition too clear to require argument or authority to prove. It is, therefore, plain that Matson and Scott never had any title to the property mentioned in the instrument executed by Jemimah Griggs. We have' already stated that an essential requisite of a deed is, that there should be a thing to be granted, or a subject matter to be contracted for. Was the slave Siney and her increase the thing or subject matter contracted for in whole or part? W«• think not. We are of opinion that the thing or subject matter contemplated by the law, so far as the transmission o Jlitle from one to another is concerned, mus, be in ¿«see; must have a substantive existence; must be good; choses in action, or a corporeal or incorpo *26 real hereditament at the time of the contract, and the grantor must have an interest therein at that time. Now, what does the instrument executed by Jemimah Griggs purport to convey, so far as it affects this controversy? Does it purport to convey any property in • existence owned by her at the time she-gave her interest in her deceased husband’s estate? It'does not. It merely contemplates to make over and transfer two thirds of what she-may inherit from her father and other relatives. Nemo est haeres vivenlis. It was uncertain when Jemimah Griggs executed the instrument, whether she would ever inherit any tiling from any one. She might have died before her father or any from whom she could inherit. The instrument seems to have been intended to operate upon property which shé hoped or expected to inherit. Such property we think cannot be affected by the contracts of heirs before descent. Descents are regulated by the rules of law, and cannot be changed by the contracts of parties; and we conceive that the heir can only convey or grant the estate after descent, there being nothing to grant before. A hope of inheritance neither lies in livery or in grant, and this is the first case that we have any knowledge of, where a person has undertaken to transfer by deed, two thirds of the property which might be cast on her'by operation of law upon the death of relations. We think it cannot be done for want of a thing to be granted at the time of executing the instrument, and consequently, that the instrument executed by Jemimah Griggs, is to be regarded as a nullity so far as itaffects this controversy.
The line of descent cannot be changed by deed. An inheritance in expectancy lies not in livery or in grant, and caimot be the subject of contract.
If direct conveyance inoperative; conveyance of a mere chance equally so, under the same circumstances.
The defendant in error claims Siney and her increase under this instrument', as part of the property of William Porter, sen. cast by. descent on his mo'ther. Now, if she had made a deed conveying Siney directly to the defendant in error, in the life time of her father, such deed would have been inoperative and void; because the property was in the adverse possession of another. We cannot perceive how a deed merely-making over a chance to get the property can be more effective.
We are aware of the doctrine that where a person having no title, makes a deed and afterwards acquires *27 title, that such after acquired title, enures to-the-benefit of the grantee as a general rule. But one of the exceptions to it precisely meets this case. In ex dem. McCracken vs. Wright, 14 Johnson’s Reports 193, it is decided that no title not in issee, will pass by deed, unless it contain a warranty, -in which case it will operate as an estoppel. See also Kircheval vs-, Triplett’s heirs for acase where a covenant of warranty will not operate as an estoppel; 1st Marshall, 493. Here there is no warranty and nothing in issee to be conveyed,-neither is it a case where the grantor is claiming against his own deed as was the case, Jackson and another vs. Murray, 12 Johnson’s Reports 201.
If grantor, ty^have no0" title at the date of his title inures to grantee, bywa^y of estopp
outV del ¡very", by commissiolier3> the'order oTa court of comP®tent juriapj^s'uan’ce of an ineffective' instrument, no
Putting aside the instrument executed by Jemimah Griggs, we will proceed to investigate the claim of the defendant in error, upon the other points presented in the record. We would, however, first remark, that we do not intend to decide what effect that instrument might have, considering it as between Jemimah Griggs and her second-husband, John Deatly, in the nature of a marriage contract, and an executory instrument contemplating a settlement for the benefit of the children of the first marriage. We will not consume time by pointing out the want of analogy between the present case and that of Bunn vs. Winthop, referred to.in 1st Johnson’s Chancery Reports 329, further than to remark that the deed in that case operated in things in issee, and the controversy was confined to the claimant, under the deed and the representatives of the grantor. Here a stranger to the deed is concerned, who has been permitted to hold possession until Siney has -had many children.
The next ground upon which title could be made out in the defendant in error, is, that the slaves in controversy, or Siney the mother, was allotted to him by commissioners acting under authority of the Bourbon county court, in dividing the estate-of.Edward Porter, Now, if the slave Siney never were the property of Edward Porter, then the division made, and the allotment of Siney to the defendant in error, as part of Edward Porter’s estate, could give-him no title. But it is very clear that the defendant in error was not entitied to any portion of the estates-of either William or *28 Edward Porter, unless he can make out title through the instrument already disposed of; as therefore, (he slaves set apart for him were not delivered to him or his guardian, we are of opinion that the division made in conformity to the instrument executed by said Jemimah, gives him no title. Jemimah Deatly and her brother John, were, according to the proof, entitled to the estates of their father, William Porter, sen. And her brothers William and Edward dying intestate before the father, he was entitled to their estates.
When a contra of to provide for former children, entered into before -«¡econd marriage, be actually executed by distribution of the property, according to its stipulations, & such children have had five years posses sion the court will not disturb, in favor of a creditor of the second husband, tho’ the original marriage contract conferred on them no title.
Decree and mandate.
Crittenden for plaintiffs; Feemster for defendant-
Now, after the estate of the father had been divided between Jemimah and John, if Jemimah and her husband Deatly consented to divide their share among (he children of Henry Griggs, deceased, as provided for in the instrument executed by said Jemimah before marriage, and did so divide their share and deliver over the property in pursuance of the division, we will not be disposed to question the title of the children after their possession has been continued five j'ears. But in this case- Deatly, who in virtue of his marriage, became entitled, surrendered Siney to pay an execution against him, and for which he had become bound individually by entering into a replevin bond, although the debt at first was only against him as administrator of Edward Porter. The defendant in error at that time had no title; the property had never been delivered to him. Siney was sold and Brown purchased her, and took possession. We think he and his vendee should be protected in that possession. Having decided against the title'of the defendant in error, it is not necessary to notice other questions.
The decree of the court below must be reversed, the cause remanded with instructions to that court to dismiss the bill filed by the defendant in error as it respects Beard, who must recover his costs in this cour!" as well as thd court below.